IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ELMER MENDEZ LEIVA, | | |
| Petitioner, | | **4:26CV3023** |
| v. | | |
| PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office;[1] TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; DAREN MARGOLIN, Executive Office of Immigration Review; TODD BLANCHE, Acting Attorney General of the United States;[2] DONALD J. TRUMP, President of the United States; and WARDEN OF MCCOOK DETENTION FACILITY, in their official capacities, | | **MEMORANDUM AND ORDER** |
| Respondents. | | |

This matter is before the Court on petitioner Elmer Mendez Leiva's ("Mendez Leiva") amended petition for a writ of habeas corpus (Filing No. 9). *See* 28 U.S.C. §§ 2241(c)(3), 2201-2202. Mendez Leiva states he is physically detained in the "McCook Detention Center" in McCook, Nebraska. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 493-500 (1973). He names as

---

[1]Peter Berg retired from United States Immigration and Customs Enforcement ("ICE") in June 2025. David Easterwood appears to be the Director of the St. Paul Field Office for ICE.

[2]Markwayne Mullin was sworn in March 24, 2026, and is automatically substituted for his predecessor, Kristi Noem. *See* Fed. R. Civ. P. 25(d). Todd Blanche, the Acting Attorney General of the United States, is likewise substituted for his predecessor, Pamela Bondi. *See id.* The Clerk of Court is directed to make those changes on the docket sheet.

respondents Peter Berg, purported Director of the St. Paul Field Office of ICE; Todd M. Lyons, Acting Director of ICE; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States; Donald J. Trump, President of the United States; and the "Warden of McCook Detention Facility" (the "warden" and collectively, the "respondents").

Mendez Leiva argues his detention violates (1) the statutory scheme set forth in sections 235 and 236 of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. §§ 1225 and 1226; (2) his procedural- and substantive-due-process rights under the Fifth Amendment to the United States Constitution; and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*   For the reasons explained below, his petition is denied.

## I.   BACKGROUND[3]

Mendez Leiva is a native and citizen of El Salvador who entered the United States without inspection near El Paso, Texas, on April 6, 2022 (Filing Nos. 14, 16).[4]   He was not admitted or paroled into the country.   After a traffic stop in Omaha, Nebraska, on January 2, 2026, ICE officers detained him and placed him in removal proceedings for being inadmissible under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i).   An immigration judge ("IJ") held a hearing on January 20, 2026, and denied Mendez Leiva's request for a bond hearing due to his status as an applicant for admission subject to mandatory detention under § 1225(b)(2)(A).   *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that IJs lack authority to grant bond to aliens like Mendez Leiva

---

[3]The background facts are taken from the amended petition (Filing No. 9), the parties' briefs (Filing Nos. 14, 19) and Mendez Leiva's immigration paperwork that the parties have submitted (Filing Nos. 16, 17).

[4]The Court's prior order (Filing No. 10) stated Mendez Leiva was a native of Mexico who entered the United States in 2021.   This misstatement was based on Mendez Leiva's assertions in his amended petition (Filing No. 9) and has been corrected based on his immigration records, including a sworn affidavit by a deportation officer familiar with Mendez Leiva's case (Filing No. 16).

who are present in the United States without admission).  According to Mendez Leiva's DHS "Form I-213, Record of Deportable/Inadmissible Alien," he reported  having "no fear of returning" to El Salvador (Filing No. 17-1).  Nevertheless, on February 13, 2026, while his removal proceedings were pending, Mendez Leiva filed a "Form I-589, Application for Asylum and for Withholding of Removal."  He remains detained at the McCook Detention Center pending the outcome of his removal proceedings.

On January 29, 2026, Mendez Leiva filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 with this Court (Filing No. 1) and amended that petition once as a matter of course.  *See* 28 U.S.C. § 2242 (explaining that a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions").

The Court then ordered the warden (Filing No. 10)  to "certify the true cause of [Mendez Leiva's] detention."  28 U.S.C. § 2243.  In response (Filing No. 21), the warden states she is holding Mendez Leiva pursuant to a contract with the federal government and takes no position on the habeas petition.  The federal respondents have also responded (Filing Nos. 14-16) and filed a Notice of Binding Supplemental Authority (Filing No. 23).  *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *5-6 (8th Cir. Mar. 25, 2026).  Mendez Leiva has replied (Filing Nos. 17, 19).  The petition is ready for decision.

## II.    DISCUSSION
### A.    Habeas Corpus

Absent suspension, "the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2).  Under § 2241, the writ is extended to persons "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).  Mendez Leiva generally bears the burden of proving that his detention is unlawful.  *See Maye v. Pescor*, 162 F.2d 641, 643 (8th Cir. 1947) (noting in a "habeas corpus proceeding, the burden [is] upon [the petitioner] to establish some or all of the charges in his petition").

3

The Court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 473, 483 (2004). Mendez Leiva is physically detained within the geographical boundaries of this district, and the federal respondents do not dispute that this Court possesses habeas jurisdiction. *See* 28 U.S.C. § 2241(a).

### B.    Classification under §§ 1225 and 1226

Some aliens who are in removal proceedings "may" be detained or "may" be released on bond while their removal proceedings are pending. 8 U.S.C. § 1226(a). In other instances, however, aliens who were not lawfully admitted to the country and who were "not clearly and beyond a doubt entitled" to admission, "shall be detained" pending a hearing before an IJ to determine whether the alien should be removed from the country. 8 U.S.C. § 1225(b)(2)(A).

Mendez Leiva does not dispute that he is an "applicant for admission," that is, "an alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a). Yet he claims the mandatory detention provision in § 1225(b)(2) does not apply to him because he is not "seeking admission." *See id.* § 1225(b)(2)(A). The Eighth Circuit Court of Appeals's recent decision forecloses this argument. *See Avila*, 2026 WL 819258, at *5-6 (holding that aliens who are "applicants for admission" under 8 U.S.C. § 1225(a) are also "seeking admission" and thus subject to mandatory detention under § 1225(b)(2)(A)). Thus, Mendez Leiva cannot carry his burden to show that he is unlawfully detained under § 1225(b)(2)(A) as a matter of law.

### C.    Procedural Due Process

Mendez Leiva next argues the IJ's refusal to provide him an individualized bond hearing violates his procedural-due-process rights under the Fifth Amendment. As he sees it, the Court should engage in interest balancing and find that his private interest in "be[ing] free from detention" outweighs "the government's interest in maintaining the current procedures." *See, e.g., Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1185-90 (D. Minn.

2025) (applying the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), balancing test to conclude that the Fifth Amendment's Due Process Clause requires a bond hearing for an applicant for admission detained under 8 U.S.C § 1225(b)(2)).[5]

The federal respondents counter that Mendez Leiva's detention is temporary. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . § 1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].'" (alterations in original)). And because his detention is not indefinite, it does not offend process. *See Demore v. Kim*, 538 U.S. 510, 531 (2003).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). At the same time, the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522; *accord Flores*, 507 U.S. 305-06 (same). That is because "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Demore*, 538 U.S. at 522. "[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." *Flores*, 507 U.S. at 305 (quoting

---

[5]Although Mendez Leiva has provided some interesting district court cases on the issue, district court decisions—even those from this district—are not binding on this Court. *See Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009) ("[O]ne district court is not bound by the holdings of others, even those within the same district."). They are pertinent only to the extent that they have the power to persuade. In contrast, this Court must follow binding precedent from the United States Supreme Court and the Eighth Circuit Court of Appeals. *See Hood v. United States*, 342 F.3d 861, 865 (8th Cir. 2003).

*Mathews v. Diaz*, 426 U.S. 67, 81 (1976)). "[O]ver no conceivable subject is the legislative power of Congress more complete." *Id.* (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).

The Supreme Court has likewise long upheld "detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *accord Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation.").

As an applicant for admission, Mendez Leiva's due-process protections are also different from aliens lawfully admitted to the United States. *See Zadvydas*, 533 U.S. at 693. Aliens who arrive at ports of entry, and those "paroled elsewhere in the country *for years pending removal*—are 'treated' *for due process purposes* "as if stopped at the border." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (emphasis added) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). The same is true for aliens who enter the country illegally. *See id.* at 140 (explaining that an alien detained after an unlawful entry is "treated as an 'applicant for admission,'" *see* § 1225(a)(1), and has not "effected an entry," (quoting *Zadvydas*, 533 U.S. at 693)). Aliens who are applicants for admission only have "those rights regarding admission that Congress has provided by statute," *id.*, and may be detained "during the limited period necessary for their removal proceedings," *Demore*, 538 U.S. at 526.

In *Demore*, a detainee argued his mandatory detention under 8 U.S.C. § 1226(c) violated due process because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court concluded his due-process claim "must fail" because "[d]etention during removal proceedings is a constitutionally permissible part of the process," *id.* at 531, and has a "definite termination point"—the end of the removal proceedings, *id.* at 529.

6

This is not a new rule.  In *Carlson*, the Supreme Court upheld detention without bond for removable aliens who were active communists.  *See Carlson*, 342 U.S. at 530. Although the Attorney General had the discretionary power to release them on bond, the government adopted a broad policy of refusing bond to such aliens as a group.  *See id.* at 532-42.  The Supreme Court rejected the detainees' argument that they were entitled to bond if they did not pose a flight risk, explaining "[d]etention is necessarily a part of this deportation procedure."  *Id.* at 538; *see also Demore*, 538 U.S. at 525 (explaining that in *Carlson*, there was no "'individualized findin[g]' of likely future dangerousness as to any of the aliens and, in at least one case, there was a specific finding of nondangerousness" but the Supreme Court nonetheless concluded that detention without individualized bond hearings was permissible (alteration in original) (internal footnote omitted)).

Consistent with those principles, the Eighth Circuit recently held that the year-long detention of an alien detained without a bond hearing under 8 U.S.C. § 1226(a) did not violate due process.  *See Banyee v. Garland*, 115 F.4th 928, 930-34 (8th Cir. 2024) (clarifying that "[d]ue process imposes no time limit on detention pending deportation"). The *Banyee* detainee had petitioned a district court for habeas relief under § 2241.  *Id.* at 930.  In reversing the district court's grant of habeas and order for a conditional bond hearing, the Eighth Circuit did not mince words: "The rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'"  *Id.* at 931 (quoting *Demore*, 538 U.S. at 538).

Like the petitioner in *Banyee*, Mendez Leiva asks the Court to engage in interest balancing to determine what process is due.  *See Mathews*, 424 U.S. at 335.  But in resolving other immigration-detention challenges, the Supreme Court has not relied on the *Mathews* framework.  *See*, *e.g.*, *Demore*, 538 U.S. at 521-31; *Flores*, 507, U.S. at 299-315. *see also Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").  Neither has the Eighth Circuit.  *See Banyee*, 115 F.4th at 933 (eschewing *Mathews* balancing and

explaining that "*Zadvydas* and *Demore* have already done whatever balancing is necessary"). "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. "[T]he government can detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee*, 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527).

Mendez Leiva's removal proceedings are still pending. *See id.* He has not provided, and the Court has not found, any binding authority that the Fifth Amendment entitles him to an individualized bond hearing. He is being held under § 1225(b), which mandates his detention. Given the process he is receiving, the Court cannot say that his temporary detention pending his removal proceedings violates his procedural-due-process rights under the Fifth Amendment. *See id.* at 931 (explaining that "Congress may make rules as to aliens that would be unacceptable if applied to citizens," and the length of detention does not determine legality because "what matters is that detention pending deportation '[h]as a definite termination point'—deporting or releasing the alien" (quoting *Demore*, 538 U.S. at 528-29)).

That Mendez Leiva challenges his mandatory detention under § 1225(b), rather than § 1226(c), which was at issue in *Banyee* and *Demore*, makes little difference. *See Jennings*, 583 U.S. at 297 (noting that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). And despite factual differences between the Supreme Court's immigration-detention cases, for over a century the Supreme Court has upheld congressional authorization to the executive branch to detain aliens—with or without criminal records—pending their removal proceedings. *See Demore*, 538 U.S. at 524 (explaining that "the aliens in *Carlson* were not flight risks" and "had not been found individually dangerous"); *Flores*, 507 U.S. at 297 (rejecting due-process challenges to a regulation placing unaccompanied alien minors in detention pending their release to parents, relatives or legal guardians); *Carlson*, 342 U.S at 528-43 (determining that due

8

process did not require individualized bond hearings to determine flight risk or dangerousness for aliens detained at the Attorney General's discretion pending determinations of deportability); *Wong Wing*, 163 U.S. at 235 (noting in dicta the difference between unconstitutional punishment imposed before deportation as opposed to detention pending removal proceedings and concluding it is "clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid").

As the petitioner, Mendez Leiva, bears burden of showing he is entitled to habeas relief. *See Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966). His arguments do not persuade the Court that his detention violates his procedural-due-process rights.

### D.    Substantive Due Process

Mendez Leiva's substantive-due-process claim fares no better. He argues that because the Fifth Amendment protects a person's right to "life, liberty, or property," U.S. Const. amend. 5, and there is "no question that [he] has been deprived of his liberty," in his view, his substantive-due-process right to liberty has been violated.

Despite the dearth of details or legal support in Mendez Leiva's petition, the Court will attempt to analyze his substantive-due-process claim. The Due Process Clause of the Fifth Amendment is a source of substantive as well as procedural rights. *See Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "When a fundamental right is at stake, the Government can act only by narrowly tailored means that serve a compelling state interest." *Id.*

To determine whether an asserted right or liberty is "fundamental" and thus warrants protection as a substantive-due-process right under the Fifth Amendment, the Court (1) "insists on a 'careful description of the asserted fundamental liberty interest,'" and (2) "stresses that 'the Due Process Clause specially protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and

tradition.'"  *Id.* (quoting *Glucksberg*, 521 U.S. at 720-21).  This is a heavy lift in the immigration context.  *See id.* at 911 ("[I]t would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight.").  So, it comes as no surprise that Mendez Leiva fails at both steps.

Mendez Leiva only defines his substantive-due-process right as "liberty."  That is hardly a "careful description of the asserted right."  *Flores*, 507 U.S. at 302 (1993).  Perhaps his claim could be "repackaged as freedom from 'physical restraint' or freedom from 'indefinite detention,' [ ] but it is at bottom a claimed right of release into this country by an individual who concededly has no legal right to be here.  There is no such constitutional right."  *Zadvydas*, 533 U.S. at 702-03 (Scalia, J. dissenting) (internal citation omitted).  Mendez Leiva also makes no argument that his purported fundamental right to be released into the interior of the United States pending a determination of his removability is "deeply rooted in this Nation's history and tradition."  *See Munoz*, 602 U.S. at 911 (quoting *Glucksberg*, 521 U.S. at 721)).  As difficult and likely frustrating as Mendez Leiva's situation is, the Court declines the invitation to swim against the tide of contrary Supreme Court precedent.

### E.    Administrative Procedure Act

Leaving no stone unturned, Mendez Leiva incorporates all "previous arguments" and asserts the "IJ's decision violates the [APA], specifically that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; and without observance of procedure required by law."  *See* 5 U.S.C. § 706(2)(A)-(D).

For the reasons explained above, the Court cannot say that denying Mendez Leiva a bond hearing was "contrary to a constitutional right," *see Carlson*, 342 U.S. at 538, or "not in accordance with the law, *see Avila*, 2026 WL 819258, at *5-6.  Mendez Leiva has

10

done nothing to persuade the Court that the IJ's decision to follow a precedential opinion by the Board of Immigration Appeals—which is binding on IJs—qualifies as "arbitrary, capricious, an abuse of discretion" or "in excess of statutory jurisdiction, authority, or limitations; and without observance of procedure required by law."   Apart from citing to the APA generally, Mendez Leiva has "failed to cite to any legal authority" in support of this conclusory argument and "it is not this court's job to research the law to support [his] argument." *Molasky v. Principal Mut. Life Ins. Co.*, 149 F.3d 881, 885 (8th Cir. 1998).

Accordingly,

IT IS ORDERED:

1.    Petitioner Elmer Mendez Leiva's Amended Petition for Habeas Corpus (Filing No. 9) is denied in its entirety.

2.    A separate judgment will issue.

Dated this 8th day of April 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

11